**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: CF&I FABRICATORS OF UTAH, INC.,

    Reorganized Debtor.

--------------------------------------------------

UNITED STATES TRUSTEE,

    Appellee,

v.

CF&I FABRICATORS OF UTAH, INC.; PUEBLO METALS COMPANY; PUEBLO RAILROAD SERVICE COMPANY; COLORADO & WYOMING RAILWAY COMPANY; DENVER METALS COMPANY; COLORADO & UTAH LAND COMPANY; CF&I FABRICATORS OF COLORADO, INC.; KANSAS METALS COMPANY; ALBUQUERQUE METALS COMPANY; CF&I STEEL CORPORATION, collectively "debtors",

    Appellants.

No. 97-4079

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 96-CV-920-C)**

---

Weston L. Harris (Elaine A. Monson, with him on the briefs), Ray, Quinney & Nebeker, Salt Lake City, Utah, for Appellants.

Bruce G. Forrest (Martha L. Davis, General Counsel, Paul Bridenhagen, and William Kanter, with him on the briefs) Attorneys, Appellate Staff, Department of Justice, Washington, D.C., for Appellee.

---

Before **PORFILIO**, **MCKAY**, and **TACHA**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

In this case, we are asked to determine the effect of Congress' amendment of 28 U.S.C. § 1930(a)(6) which governs the imposition of quarterly fees for the United States Trustee (UST) in certain Chapter 11 bankruptcy reorganizations. Because it could find no clear congressional intent to impose the fee retroactively and determined the fee would impermissibly require modification of a confirmed and substantially consummated plan of reorganization, the bankruptcy court held the UST could not assess the fees. The district court disagreed, and we now affirm.

In 1990, CF&I Fabricators of Utah, Inc. and nine related entities (Debtors) filed a petition for Chapter 11 reorganization primarily because they could not fund their employer-sponsored pension plans. The bankruptcy proceedings culminated in a reorganization plan (Plan) which the bankruptcy court confirmed on February 12, 1993.

From the date of filing through confirmation, and, indeed, through substantial consummation of the Plan, § 1930(a)(6) provided:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) **until a plan is confirmed or the case is converted or dismissed**, whichever occurs first.

(emphasis added).

Mirroring the statute in effect at the time, the Plan provided for payment of UST fees until confirmation. In addition, the Plan established numerous deadlines for filing additional claims, including a specific deadline for filing "Administrative Claims" -- a term defined to include the UST fees. Pursuant to the statute, the UST charged and collected its quarterly fee until the Plan was confirmed at which time the UST no longer assessed the fees.

On January 26, 1996, long after all deadlines for filing additional claims had passed and after the Plan had been substantially consummated, Congress amended § 1930(a)(6) deleting the phrase "a plan is confirmed or." ***Balanced Budget Downpayment Act, I***, Pub. L. No. 104-99, § 211, 110 Stat. 26, 37-38 (1996). Hence, because of the amendment, a debtor's obligation to pay quarterly UST fees no longer terminated upon confirmation. The Conference Report stated:

> The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is

converted or dismissed.  The conferees intend that this fee will apply to both pending and new cases.

**H.R. Conf. Rep. No.** 104-378 (1995).

In response to the amendment, the UST assessed the next quarterly fee against Debtors.  Although they paid the fee, Debtors subsequently moved for an order directing the UST to refund the fees.  The bankruptcy court granted Debtors' motion reasoning, "[t]he UST essentially asserts claims arising after the expiration of all applicable bar dates, against funds already allocated to creditors with allowed claims."  **In re CF&I Fabricators, Inc.**, 199 B.R. 986, 991 (Bankr. D. Utah 1996).  The court believed the UST was seeking a modification to an already confirmed reorganization plan.  The court noted only proponents of the plan or the reorganized debtor may modify a confirmed plan and only before substantial consummation.[1]  *See* 11 U.S.C. § 1127(b).  Finally, the court stated Congress had not shown a clear intent the fees be applied retroactively.

Three weeks later, Congress enacted a further clarification of § 1930(a)(6):

Section 101(a) of Public Law 104-91, as amended by section 211 of Public Law 104-99, is further amended by inserting ": Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans...."

---

[1]The bankruptcy court in this case found the Plan was substantially consummated, the district court assumed it, and the parties do not dispute the issue here.

*Omnibus Consolidated Appropriations Act, 1997*, Pub. L. No. 104-208, § 109(d), 110 Stat. 3009, 3009-19 (1996).

On appeal, the district court reversed the bankruptcy court's decision holding "[t]he clarifying amendment leaves no doubt, if there was any before, that Congress intended that § 1930(a)(6) apply to all pending Chapter 11 cases, including those with plans confirmed prior to the effective date of the statute." *In re CF&I Fabricators*, 214 B.R. 16, 18 (D. Utah 1997). The court also held the UST was not seeking a post-confirmation modification of the Plan because "[t]he fees that the debtors must pay are 'administrative expense[s] attendant to an open case.'" *Id.* at 19 (quoting *In re McLean Square Assocs.*, 201 B.R. 436, 441 (Bankr. E.D. Va. 1996)). From this order, Debtors have appealed.

### I.

Debtors first argue, under the express language of § 1930(a)(6), they do not owe the UST any fees. They maintain § 1930(a)(6) only requires payment of fees if a case is "converted or dismissed." This case, they insist, will neither be converted nor dismissed; instead, it will likely be closed upon successful completion of the Plan. Hence, Debtors conclude, no fees are due.

In support of their argument, Debtors rely primarily upon *In re Gryphon*, 204 B.R. 460 (Bankr. W.D. Pa. 1997), a case reversed on other grounds after submission of briefs

in this appeal.  The bankruptcy court in ***In re Gryphon*** stressed what it viewed as the

ambiguity Congress created when it amended § 1930(a)(6):

> As now enacted, § 1930(a)(6) requires payment of the quarterly fee until the
> case is converted or dismissed.  Many chapter 11 cases are neither
> converted nor dismissed but are closed in the ordinary course after entry of
> a final decree....
>
>    ....
>
> The current version's language lends itself to the interpretation that the
> quarterly fee is due in perpetuity if the case is not converted or dismissed.
> Another interpretation is that Congress intended to have no fee paid when a
> case is closed without having been converted or dismissed after the chapter
> 11 plan was confirmed.

***Id.*** at 468.  We do not find this dicta particularly puissant and instead espouse the

reasoning of another court confronted with the same argument.

> The Court next finds that payment of UST fees in the instant case
> will terminate upon closing of the case....  The Court does not find
> convincing the argument that quarterly UST fees are payable only in
> "aborted" or "unsuccessful" Chapter 11 cases, i.e., cases that have been
> converted or dismissed....  First, the Amendment plainly states that quarterly
> fees "shall be paid to the United States trustee, for deposit in the Treasury,
> **in each case** under chapter 11 ..."  28 U.S.C. § 1930(a)(6) (emphasis
> added).  Because the Amendment requires payment of quarterly fees "in
> each case," and does not read "in each unsuccessful or aborted case," the
> Court finds that the Amendment is applicable to successful and
> unsuccessful Chapter 11 cases alike....  In addition, because a "case" no
> longer exists once it is closed, the Court finds that the obligation to pay
> UST fees terminates upon closure, dismissal, or conversion of a Chapter 11
> case, and will not be paid ad infinitum.

***In re A.H. Robins Co.***, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998); *see also* ***In re***

***Harness***, 218 B.R. 163, 165 (D. Kan. 1998) ("If a case is closed, we submit it is

unreasonable to consider it a 'case under chapter 11.'"); ***In re McLean***, 201 B.R. at 443

("The logical conclusion is that when a case is closed, the obligation to pay quarterly fees terminates because the possibility of conversion or dismissal no longer exists. There is no ambiguity here, Congress simply did not state the obvious.").

Moreover, when Congress amended § 1930(a)(6), it intended to increase revenues collected through UST fees. *In re Richardson Serv. Corp.*, 210 B.R. 332, 335 (Bankr. W.D. Mo. 1997) ("Congress intended the amendment would result in collection of additional revenues in order to support the self-funded administration of bankruptcy cases."). Under the former § 1930(a)(6) the UST could collect fees until either a plan was confirmed or a case was converted or dismissed. It would be absurd to conclude when Congress amended § 1930(a)(6) to broaden its reach it intended to eliminate UST fees if a case successfully closed. *Id.* ("The interpretation of the amendment given by the [*CF&I* bankruptcy court] would frustrate congressional intent by narrowing the category of debtors required to pay quarterly fees and would interfere with the ability of the U.S. Trustee Program to fund itself with respect to administration of confirmed plans.").

We believe § 1930(a)(6) applies to this case. We also believe Congress intended debtors pay UST fees until a case is converted, dismissed, *or closed* leaving no open docket in which to assess the fees.

## II.

- 7 -

Debtors next argue, post-confirmation, "[t]he Bankruptcy Court's jurisdiction in the CF&I Cases is limited to enforcing the provisions in the Debtors' Plan." Debtors rely upon 11 U.S.C. § 1142(b) which provides:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

According to Debtors, this provision limits the court's jurisdiction post-confirmation to perform only those acts listed in the statute. They argue because the Plan does not provide for post-confirmation fees, the bankruptcy court does not have jurisdiction to enforce payment of the fees.

As the sole authority to support their position, Debtors once again rely upon the bankruptcy court's decision in *In re Gryphon*. Unfortunately for Debtors, however, this is precisely the point upon which the bankruptcy court was reversed. As the district court stated:

> Section 1142(b) is a grant of authority to the bankruptcy court that channels, but does not abrogate, the bankruptcy court's jurisdiction post-confirmation. Rather, "post-confirmation jurisdiction is appropriate when the matter is 'related-to' the bankruptcy case." [Citation omitted.] For example, courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization. [Citation omitted.]
> Because an action by the United States Trustee seeking to collect quarterly fees will affect creditors' recovery if the United States Trustee is successful, the matter is sufficiently "related to" the bankruptcy case for the bankruptcy court to hear the matter.

*In re Gryphon*, 216 B.R. 764, 768-69 (W.D. Pa. 1997); *see also* *In re A.H. Robins*, 219 B.R. at 152 ("The Court does not find the analysis of *In re Gryphon* to be particularly compelling.... The Court finds that ... the power to award UST fees under § 1930(a)(6) falls within the post-confirmation authority of the court."). We can find no error in this analysis, and Debtors urge none upon us. Jurisdiction exists, post-confirmation, for imposition of the fees.

## III.

Debtors next argue assessment of the UST fees would have an impermissibly retroactive effect because Congress did not expressly manifest a retroactive intent. *See* *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.").

There are at least two problems with Debtors' argument. First, the statute is not retroactive. *See, e.g.*, *In re Richardson*, 210 B.R. at 334 (holding statute did not have retroactive effect because "[t]he amendment only triggers **prospective** assessment of fees from the amendment's effective date until entry of the final decree." (emphasis added)). Second, assuming the statute were retroactive, Congress, in the clarifying amendment, has clearly evinced its intent § 1930(a)(6) applies to cases such as this. *See* *Omnibus Consolidated Appropriations Act, 1997*, Pub. L. No. 104-208, 10 Stat. 3009, 3009-19;

*see also* **In re A.H. Robins**, 219 B.R. at 147-48 ("Virtually all cases decided since the Clarification have concluded that the Amendment applies to cases that have confirmed plans, finding that Congress expressly prescribed the proper reach of the Amendment, and that the Amendment is supported by a rational legislative purpose in accordance with the Supreme Court's decision in **Landgraf**....").

## IV.

Debtors also argue the only mechanism under which the UST could assess and collect the fees would be through modification of the Plan. However, as Debtors note, a plan can only be modified by a plan proponent or reorganized debtor and only before substantial consummation. *See* 11 U.S.C. § 1127(b). Here, they urge, the UST (not a plan proponent or reorganized debtor) is attempting to modify the Plan after substantial consummation.

Although admitting Debtors' basic premise, the UST insists it is not attempting to modify the Plan, but merely trying to collect post-confirmation obligations of a debtor. We agree. Again, we find the reasoning of **In re A.H. Robins** persuasive:

> [T]he Court does not agree with those cases denying payment of UST fees on the ground that the Amendment improperly modifies debtors' plans.... [Citation omitted.] Post-confirmation liability for UST fees is an "administrative expense attendant to an open case," **In re McLean Square Assoc.**, 201 B.R. at 441, and such fees are no different from taxes arising post confirmation, or any similar post-confirmation expenses not specified in the plan.... [Citation omitted.] Otherwise, "a plan would in effect immunize a debtor from any new assessments or increases in taxes or fees occurring post confirmation. This argument must fail ..." **In re**

> *Richardson Serv. Corp.*, 210 B.R. at 332.  The Court finds it ludicrous that some courts would allow the payment of UST fees only if the debtor's plan provided for such payments, [citation omitted] as debtors having plans confirmed before passage of the Amendment could not possibly have had the prescience to ascertain Congress' actions months, or as in the instant case, years, in advance.

*In re A.H. Robins*, 219 B.R. at 148.

Moreover, even if the imposition of UST fees did conflict with Code provisions such as § 1127(b), we would be compelled to reach the same result.  In the clarifying amendment, Congress emphasized the fees were to be imposed "notwithstanding any other provision of law."  We see no reason to ignore the mandate that fees be collected regardless of any potential conflict with § 1127(b).

## V.

The Debtors argue the amendment to § 1930(a)(6) violates the constitutional requirement of separation of powers.  Relying on *Plaut v. Spendthrift Farm*, 514 U.S. 211 (1995), they argue the imposition of these fees would require reopening the Plan which they view as a final judgment in a private civil action.  In *Plaut*, the Court, addressing a securities claim, proscribed such actions because "[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated [the doctrine of separation of powers]."  *Id.* at 219; *see, e.g.*, *In re Lancy*, 208 B.R. 481, 486 (Bankr. D. Ariz. 1997) ("Thus, a strong case is made for finding the amendment violative of the separation of powers clause.  The practical effect of the amendment is to undo a

final judgment. It requires this court to impose a new bankruptcy fee on a post-confirmation debtor, whose obligations and responsibilities are already determined.").

Debtors' argument, however, only has merit if the Plan must be modified to assess the fees. As we have already held, this contention is meritless. Because the UST fee is a mere "administrative expense attendant to an open case," the separation of powers doctrine is not implicated.[2]

## VI.

The Debtors also maintain the fees would constitute a taking of property without just compensation. To determine whether a taking has occurred, we examine "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." ***Ruckelshaus v. Monsanto Co.***, 467 U.S. 986, 1005 (1984) (quotations and citations omitted).

Here, the Debtors maintain a confirmed plan becomes a binding contract which creates vested substantive property rights; that the creditors who were parties to the Plan had reasonable expectations of receiving their allocated monies under the Plan; and imposition of fees would reduce their allocations and violate the "contract." In addition,

---

[2]Our disposition of this issue renders Appellants' Motion to Strike Portions of the Argument of Appellee moot. Accordingly, we deny the motion.

they note the future fees could total over $100,000, representing a significant amount at stake.

In response, the UST argues the governmental action here is merely an "expansion of a generally-applicable user fee [not] historically equated with the condemnation-type governmental actions that typify public takings." In addition, the UST maintains $100,000 is a "relatively minor" amount and a "fraction of the disbursements involved." Finally, the UST insists any expectation new fees would not be assessed is patently unreasonable in an on-going bankruptcy case.

We believe this last point is dispositive. To have a taking, one must have interference with **reasonable** expectations. Here, the purported expectations consist of monetary disbursements from the Debtors' estate. In a bankruptcy case as complex as this, we believe it would be patently unreasonable to expect no variability in the final amount available to plan distributees. Accordingly, in the absence of a reasonable expectation of a fixed final distribution, we cannot conclude the statute works an unconstitutional taking.

**VII.**

Finally, Debtors argue the United States was a party to a "contract," the Plan, and imposition of the fees is contrary to the terms of that contract. In particular, Debtors note under the Plan the UST fees terminated upon confirmation. The Plan also provided a

deadline for filing any additional claims, including "Administrative Claims," defined to include UST fees; a deadline which had long since run when the UST sought the fees currently under dispute. Finally, they note the Plan stated:

> [A]ll Persons ... in consideration for the obligations of the Debtors under the Plan, will be deemed to have forever waived, released, and discharged all rights or Claims, whether based upon tort, fraud, contract *or otherwise*, which they heretofore, now or hereafter possess or may possess against any of the Debtors.

(emphasis added). The Plan defined "Person" to include "governmental unit, government (or agency or political subdivision thereof)." According to the Debtors, imposition of the fees based upon a statute would, therefore, constitute a breach of this "contract" or, at least, a conflict with its terms. This, they maintain, is prohibited under the teachings of *United States v. Winstar Corp.*, 518 U.S. 839 (1996), where a plurality of the Court concluded in certain instances the United States cannot legislate itself out of contracts without breaching those contracts.

We do not dispute a reorganization plan has some indicia of a contract. For instance, the interested parties negotiate and draft the document, reach mutual agreement, and consideration is exchanged. Yet, it is also clear a confirmed plan is much more than a contract. For example, once confirmed, a plan is enforceable as a court order against parties who did not even agree to its terms. *See* 11 U.S.C. § 1141(a). In any case, we need not decide today whether a reorganization plan is a contract per se as envisioned in *Winstar*.

- 14 -

Even if we assume a plan is a contract, the dispute before us does not involve anything remotely resembling contractual issues. UST fees are not, and in this case were not, the subject of negotiation; they are purely creatures of statute imposed upon certain debtors. One cannot negotiate away this statutory fee. The Plan's provisions regarding UST fees were merely recitations of the state of the law when the Plan was drafted, not binding contractual provisions. Accordingly, even if we were to assume a reorganization plan is a contract binding the United States, we hold UST fees are not a subject of contractual agreement.

To the extent Debtors' argument relies upon § 1141(a) of the Code for support, we believe *Holywell Corp. v. Smith*, 503 U.S. 47 (1992), is dispositive. Section 1141(a), entitled "Effect of confirmation," provides a plan is binding upon debtors, creditors, and numerous other entities. Debtors argue, because the UST was involved in the creation of the Plan, § 1141(a) prohibits the UST from asserting claims not addressed in the Plan. We believe *Holywell* forecloses this argument.

In *Holywell*, the trustee argued, because the reorganization plan in question did not provide for payment of taxes upon post-confirmation sale of certain assets, the trustee did not have to pay them. The trustee maintained § 1141(a) bound the United States to the plan and the government could not assert a claim contrary to the terms of the plan. The Court expressly rejected this reasoning:

> Even if §1141(a) binds creditors of the corporate and individual debtors
> with respect to claims that arose before confirmation, we do not see how it

can bind the United States or any other creditor with respect to postconfirmation claims. Cf. 11 U.S.C. § 101(10) (1988 ed., Supp. II) (defining "creditor" as used in § 1141(a) as an entity with various kinds of preconfirmation claims.).

*Id.* at 58-59. Here, as in *Holywell*, § 1141(a) cannot bind the UST with respect to UST fees which arise, by definition, post-confirmation.

Debtors attempt to distinguish *Holywell* by insisting the Code treats taxes such as those at issue in *Holywell* differently than UST fees. In particular, they note imposition of post-confirmation UST fees would conflict with § 1129(a)(12) which requires UST fees be addressed in the plan prior to confirmation. *See, e.g.*, **In re Salina Speedway, Inc.**, 210 B.R. 851, 856 (10th Cir. BAP 1997) ("[A]utomatic imposition of post-confirmation quarterly fees regardless of the plan's language would run afoul of § 1129(a)(12)."). However, as we have already stated, Congress has directed the fees be collected "notwithstanding any other provision of law." If imposition of the fees conflicts with § 1129(a)(12), or for that matter with § 1141(a), that is the manifest intent of the law.

**AFFIRMED**.