

Villanova University School of Law Digital Repository

1999 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

1-28-1999

# US Trustee v. Gryphon Stone

Precedential or Non-Precedential:

Docket 97-3670

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"US Trustee v. Gryphon Stone" (1999). *1999 Decisions.* Paper 24.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/24

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3670

UNITED STATES TRUSTEE

v.

GRYPHON AT THE STONE MANSION, INC.,
d/b/a Erik Lewis Global
d/b/a Wanner Van Helden,
        Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 97-CV-00345)
Before: The Honorable Gary L. Lancaster

Argued Under Third Circuit LAR 34.1(a)
November 18, 1998

Before: McKEE, RENDELL and WEIS, Circuit Judges

(Filed: January 28, 1999)

        H. Thomas Byron, III, Esquire
         (ARGUED)
        U.S. Department of Justice
        Civil Division, Appellate Staff
        601 D Street, N.W.
        Washington, DC 20530-0001

        Counsel for Appellee

        Daniel J. Gates, Esquire
        Haller & Gates
        415 Northgate Drive
        Warrendale, PA 15086

        Patricia L. Blais, Esquire (ARGUED)
        Gates & Associates
        415 Northgate Drive
        Warrendale, PA 15086

        Counsel for Appellant

OPINION OF THE COURT

RENDELL, Circuit Judge.

We are asked to determine whether the Bankruptcy Court had jurisdiction to require payment of post-confirmation trustee's fees before closing the debtor's case. We also address the threshold issue of our jurisdiction to consider this appeal in light of the District Court's remand of the matter to the Bankruptcy Court. We conclude that we have appellate jurisdiction and that the Bankruptcy Court did in fact have jurisdiction over the award of fees in question. Accordingly, we will affirm the District Court's order that so held. As discussed in detail below, the Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. S 157 and 28 U.S.C. S 1334, and we have jurisdiction on appeal pursuant to 28 U.S.C. S 158(d). The District Court had jurisdiction to review the Bankruptcy Court's decision pursuant to 28 U.S.C. S 158(a).

Although the award of trustee's fees in bankruptcy cases has become a routine occurrence since S 1930 of Title 28 of the United States Code was first enacted in 1986, Congress's recent amendments to S 1930(a)(6) that imposed post-confirmation trustee's fees in all pending cases have created a controversy, with potential and actual legal and practical implications. Historically, S 1930(a)(6) set forth a scheme to impose the costs of the United States Trustee Program on its users. See H.R. Rep. No. 99-764, at 22 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5234. The statute originally provided, in relevant part, that "a

2

quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 of title 11 . . . for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first." Pub. L. No. 99-554, S 117, 100 Stat. 3088 (1986). On January 26, 1996, Congress amended the quarterly fee provision to require payment of fees post-confirmation, by striking out the language providing that the fees would accrue until "a plan is confirmed," so that the statute now reads that the fees should be paid"until the case is converted or dismissed, whichever occursfirst." Pub. L. No. 104-91, S 101(a), 110 Stat. 7 (1996) & Pub. L. No. 104-99, S 211, 110 Stat. 26 (1996).

After Congress passed the January 26, 1996 amendment, there was some confusion as to whether the amendment applied to cases in which plans had been confirmed prior to the amendment. In response, Congress enacted a second amendment to the quarterly fee provision on September 30, 1996, providing that "the fees under 28 U.S.C.S 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans." Pub. L. No. 104-208, S 109(d), 110 Stat. 3009 (1996). It is therefore clear that Congress has imposed a specific requirement that trustee's fees accrue and are payable after confirmation and up to closing of the case, which requirement applies to all cases pending as of January 1996.1

_____

1. It is generally agreed, and the parties before us do not argue otherwise, that the legislative scheme requiring payment of fees until the case is "converted or dismissed, whichever occursfirst" should be read so as to add "or closed." The Tenth Circuit recently decided this issue in United States Trustee v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.), 150 F.3d 1233 (10th Cir. 1998). Rejecting the argument that cases that are neither converted nor dismissed, but are successfully closed, are exempt from the fees, the court explained that the language of the statute providing that the fees were to be paid in "each" case under chapter 11 supported the conclusion that the statute applied in all three cases. Id. at 1236. The court also noted that, even though the statute does not explicitly state that fees would terminate upon "closure" of the case, it is unreasonable to assume otherwise,

In the specific case before us, the debtor confirmed its plan of reorganization in June of 1995. The plan provides for payment of all priority and administrative claims, sets forth the treatment of several specific creditors, and provides that unsecured creditors will receive a pro rata distribution of the remaining funds, to be paid in installments commencing 73 months from confirmation, which would be in July of 2001.[2] The debtor's plan is a liquidating plan; the debtor ceased its business and sold all of its assets as part of the plan and is distributing proceeds to creditors. The plan "estimates" that the fund available for unsecured creditors would be $83,042.40 and that unsecured creditors should receive 25-33% on account of their claims.

The debtor moved for entry of a final order to close the case in April 1996, and the trustee objected on the basis that post-confirmation trustee's fees had not been paid.[3] The Bankruptcy Court entered an order granting the debtor's motion but reserving the issue of what fees were due. At oral argument before us, it was conceded that the funds awaiting distribution to unsecured creditors are on hand with the debtor's agent and that the post-confirmation trustee's fees at issue are in the approximate amount of $750.

_____

because once a case is closed it is no longer a case "under chapter 11" under the quarterly fee statute, and because there is no possibility of conversion or dismissal after closure. Id.; see also In re A.H. Robins Co., Inc., 219 B.R. 145, 149 (Bankr. E.D. Va. 1998). The Sixth Circuit came to a similar conclusion, albeit by different reasoning, in Vergos v. Gregg's Enters., Inc., 159 F.3d 989, 990-93 (6th Cir. 1998) (finding that, although S 1930(a)(6) is ambiguous, reading the statute to require termination of fees upon closure is consistent with Congressional intent).

2. The Bankruptcy Court decided this case en banc because several dozen cases were impacted by the new requirement. However, we can only address the case before us on its own facts. This is especially important as we determine our jurisdiction to hear this matter on appeal, which, as we note below, may turn on the unique facts of the case.

3. It is unclear whether the trustee actually filed a claim for fees or otherwise sought enforcement, but the record indicates that the debtor did file an objection to the trustee's claim.

4

The en banc Bankruptcy Court ultimately determined that the bankruptcy court lacks jurisdiction over post-confirmation claims and the trustee must go elsewhere to pursue these claims. En route to reaching this conclusion, however, the court entertained numerous difficult questions posed, and problems presented, by the legislative scheme that, the court felt, created an obligation seemingly inconsistent with the provisions of the Bankruptcy Code and the practical and legal implications of belatedly imposing such fees in the context of a confirmed plan.4

Although neither of the parties on appeal argues that the Bankruptcy Court's holding was broader than its jurisdictional pronouncement (nor does either seek a remand in order for the District Court to address other issues argued to the court), nonetheless, each of the parties urges its own view as to whether the fees in question are to be paid in the context of a confirmed reorganization plan. However, this issue has little bearing on our ruling as to the Bankruptcy Court's jurisdiction. It may, however, have some bearing on the question of our jurisdiction over this appeal, as becomes apparent in our discussion below.

The Bankruptcy Court reviewed cases commenting on the limited role of bankruptcy courts after confirmation, and drew from them the conclusion that its jurisdiction was limited to matters concerning the implementation or execution of a confirmed plan, and did not extend to enforcement of the post-confirmation fee provision.5 The Bankruptcy Court focused its analysis on 11 U.S.C. S 1142(b), which provides that, in order to implement the plan, the bankruptcy court may direct the debtor to

_____

4. The court explored the enforceability of such a claim, its status as a priority or administrative claim, the debtor's ability to modify a plan, who would be liable for such a fee, the potential for violation of the takings clause of the Constitution, and, finally, the possible result that by permitting collection, plan defaults would result, undermining both the bankruptcy and trustee's fee statutes.

5. The Bankruptcy Court suggested that it would have had jurisdiction if the confirmed plan reserved jurisdiction over the post-confirmation fee issue. Of course, the confirmed plan did not address the post-confirmation fees, since they did not exist at the time the plan was confirmed.

perform such acts as are necessary for the consummation of the confirmed plan. The District Court addressed the issue of the Bankruptcy Court's jurisdiction in the broad sense and determined that the Bankruptcy Court did in fact have jurisdiction over the award of the trustee's fees. The District Court accordingly remanded the case back to the Bankruptcy Court for further proceedings.

Our review of the District Court's decision is governed by the principle that we are in as good a position to evaluate the Bankruptcy Court's findings as the District Court was. We review the Bankruptcy Court's findings by the same standard that should have been employed by the District Court to determine if the District Court erred in its review. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981). Thus, our review of the legal questions presented in this case is plenary. First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 567 (3d Cir. 1991).

We will affirm the District Court's ruling and adopt its reasoning. The District Court correctly concluded that an analysis of the Bankruptcy Court's jurisdiction begins with 28 U.S.C. S 1334, not with 11 U.S.C. S 1142. See Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997). Section 1334 provides that the district courts "shall have original and exclusive jurisdiction of all cases under title 11," and "original, but not exclusive, jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. S 1334(a)-(b). The Bankruptcy Court, by virtue of referral by the District Court, has jurisdiction over cases falling under these categories. See 28 U.S.C. S 157(a)-(b).

We agree with the District Court's conclusion that the trustee's action to enforce the post-confirmation fee provision is "related to" or "arising in" the bankruptcy, and was thus within the Bankruptcy Court's jurisdiction. A matter is "related to" a chapter 11 case if it " `could conceivably have any effect on the estate being administered in bankruptcy.' " Belcufine , 112 F.3d at 636 (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Belcufine further defined the test as whether the outcome of the case " `could alter the debtor's rights, liabilities, options, or freedom of action (either positively or

negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " Id. The trustee's award of fees clearly satisfies this test, because it directly relates to the debtor's liabilities -- in fact it creates a liability -- and could impact the handling and administration of the estate.

Although finding that the trustee's action is related to a bankruptcy case is sufficient in order to establish the Bankruptcy Court's jurisdiction, the District Court also found that the trustee's action might even be said to "arise in" bankruptcy. We agree. Proceedings "arise in" bankruptcy if they have no existence outside of the bankruptcy. See Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987). By definition, an action for trustee's fees pursuant to S 1930(a)(6) applies only in chapter 11 cases, during the pendency of the case.6

Furthermore, 11 U.S.C. S 1142(b), the provision relied upon by the Bankruptcy Court to support its conclusion that its jurisdiction was limited, does not change the jurisdictional analysis under S 1334. Section 1142(b) provides that the bankruptcy court may take action to ensure the consummation of a confirmed plan; it does not provide that this is the only action the bankruptcy court may entertain post-confirmation. As explained by the District Court, "[s]ection 1142(b) is a grant of authority to the bankruptcy court that channels, but does not abrogate, the bankruptcy court's jurisdiction post-confirmation." United States Trustee v. Gryphon at the Stone Mansion, Inc., 216 B.R. 764, 768 (W.D. Pa. 1997) (emphasis added).

We affirm the reasoning of the District Court as a proper statement of the breadth of the Bankruptcy Court's jurisdiction to entertain issues that necessarily must come

_____

6. Because we have determined that this claim"arises in" bankruptcy, we need not be concerned about the extent of the Bankruptcy Court's power to resolve this claim on its own -- without reference to the district
court -- on remand. Claims that by nature can only arise in a bankruptcy context are "core proceedings" that the bankruptcy court has comprehensive power to hear and decide by enteringfinal orders and judgments. See Torkelsen v. Maggio (In re The Guild & Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996).

7

its way prior to the close of the case. Although the Bankruptcy Court may have been justified in harboring genuine reservations as to the categorization and implementation of this claim imposed by Congress after the fact, nonetheless the Bankruptcy Court clearly had jurisdiction to entertain the trustee's claim and provide for it.

We address our jurisdiction to entertain this appeal at this juncture because our decision is informed by the facts we have recounted and statutory provisions we have referenced. The prevailing rule followed by the majority of the circuit courts is that courts of appeals have jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. S 158(d) notwithstanding a remand ordered by the district court if there is little left for the bankruptcy court to do. See In re Lopez, 116 F.3d 1191, 1192 (7th Cir.), cert. denied, 118 S. Ct. 599 (1997) (explaining that such orders are appealable only if "the further proceedings contemplated are of a purely ministerial character"). Our court applies an even more liberal rule in determining appealability, balancing reluctance to broaden traditional interpretations offinality against desire to further the expeditious completion of the bankruptcy proceedings. See id. at 1193-94; In re Market Square Inn, Inc., 978 F.2d 116, 120 (3d Cir. 1992). This rule is based on the principle that "finality" in the bankruptcy sense is a flexible concept, taking into account the protracted nature of many bankruptcy proceedings, and the waste of time and resources that might result if immediate appeal were denied. See Market Square Inn, 978 F.2d at 120.

Nonetheless, if the Bankruptcy Court proceedings on remand would be purely ministerial, we need not resort to the balancing test, since we would have jurisdiction under either the prevailing or our own test. In order to make that determination, we must answer the question: "What is left for the Bankruptcy Court to do on remand?" Here, the debtor has funds on hand awaiting distribution to unsecured creditors. It is up to the Bankruptcy Court to order trustee's fees to be paid from available funds in compliance with law. In fact, all the Bankruptcy Court has to do to assess the fees is look to the specific amounts

8

provided for in S 1930(a)(6). This action is indeed ministerial.

This is not the situation which seemed to confound the Bankruptcy Court in its opinion, namely, where no funds are available. Nor do we view this, as the Bankruptcy Court clearly did, as a situation in which Congress has legislated a claim not cognizable in connection with a confirmed plan. To the contrary, we agree with the statement of the trustee's counsel that Congress's "mandate requiring payment of post-confirmation quarterly fees is not an effort to alter the terms of pre-existing debts; rather, it creates a new expense that did not exist before the plan was confirmed." Brief for Appellee at 7. Courts recently addressing the nature of these post-confirmation fees have regularly found them to be an administrative claim arising during the case that must be paid or provided for, and, that does not constitute an impermissible modification of the confirmed plan. See, e.g., CF&I Fabricators, 150 F.3d at 1238 (noting that post-confirmation fees are administrative expenses attendant to an open case and are " `no different from taxes arising post confirmation, or any similar post-confirmation expenses not specified in the plan' " (quoting A.H. Robins, 219 B.R. at 148)).

The holding in Holywell Corp. v. Smith, 503 U.S. 47 (1992), is instructive on this issue. In Holywell, the Supreme Court rejected the argument that a trustee was not obligated to pay taxes that accrued post-confirmation because they were not provided for in the confirmed plan. Id. at 58. The Court noted that the tax liability did not arise until after the plan was confirmed, and that the plan did not and could not extinguish claims arising post-confirmation. Id. at 58-59. Like the tax liability in Holywell, the trustee's claim for post-confirmation fees did not exist until after the plan was confirmed, so the plan could not discharge the debtor's obligation to pay the fees.

Notwithstanding the Bankruptcy Court's skepticism that Congress would impose fees in contravention of the scheme set out in the Bankruptcy Code, we suggest that, by amending S 1930(a)(6) as it did, Congress has in fact purposely changed the scheme so as to require payment of trustee's fees until the case is closed. The fact that the fees

do not fit nicely into plan parlance is irrelevant. Congress has mandated that they be paid.7

We should also note that this issue should be of waning importance, with the passage of time. Debtors, now aware of this post-confirmation obligation, will reserve funds in order to fulfill this obligation.

For all of the foregoing reasons, we will affirm the order of the District Court.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit
_____

7. Courts have considered and rejected constitutional challenges to amended S 1930(a)(6) based on retroactivity and violation of the takings clause of the Fifth Amendment ("takings clause"). The retroactivity argument, although not raised specifically by appellant on appeal, has been rejected on the basis that the fee provision is not retroactive, or, alternatively, that even if it is retroactive, it is constitutionally sound
because it is supported by a rational legislative purpose. See CF&I Fabricators, 150 F.3d at 1237-38; In re McLean Square Assocs., 201 B.R. 436, 441 (Bankr. E.D. Va. 1996); A.H. Robins, 219 B.R. at 148; In re Richardson Serv. Corp., 210 B.R. 332, 334 (Bankr. W.D. Mo. 1997). Appellant did raise a takings clause challenge to the statute, but it is also without merit. Application of the fee provision post-confirmation is not a violation of the takings clause because, due to the vagaries of the bankruptcy process, there can be no reasonable expectation that the amount of the final distribution will remain fixed throughout the process. See CF&I Fabricators, 150 F.3d at 1238-39 (noting that one of the elements of a takings clause violation is interference with reasonable investment-backed expectations, and that "[i]n a bankruptcy case as complex as this, we believe it would be patently unreasonable to expect no variability in the final amount available to plan distributees").

10