In re CONTEMPRI HOMES,
INC., Debtor.

Office of the U.S. Trustee, Movant,

v.

Contempri Homes, Inc., Respondent.

Bankruptcy No. 5–97–00496.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes-Barre Division.

Feb. 1, 2000.

Gregory Lyons, Office of U.S. Trustee, Harrisburg, PA, for movant.

Jack M. Seitz, Blank, Rome, Comisky & McCauley, Allentown, PA, for creditors' committee.

William Burnett, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, for creditors' committee.

Francis J. Wormuth, Wormuth & Mey, Scranton, PA, for debtor.

### *OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Spartan Mills v. Bank of America Illinois,* 112 F.3d 1251 (4th Cir.1997) *citing Celotex Corp. v. Edwards,* 514 U.S. 300, 305–07, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

With these principles as my guide, I will now address the merits of the instant controversy. Contempri Homes, Inc. filed a petition under Chapter 11 on February 21, 1997. I entered an Order confirming the Joint Plan of Reorganization filed by the Debtor and the Creditors' Committee on June 29, 1998. Thereafter, on November 17, 1998, the United States Trustee filed a Motion to Compel the Payment of Quarterly Fees and Motion to Dismiss, Convert to Chapter 7 or for the Entry of a Final Decree.

Central to this controversy is the impact of my Order confirming the plan of reorganization. Paragraph 14.4 of the plan reads as follows:

> Trustee's Fees. In accordance with 28 U.S.C. § 1930 and § 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtor shall pay to the U.S. Trustee, on the Effective Date, and thereafter as required by the Code, all fees payable under § 1930 of Title 28, which shall be in an amount equal to no more than $3,750.00 for the quarter beginning July 1, 1998 and no more than $1,500.00 for each quarter thereafter.

The United States Trustee (UST) argues that regardless of this language, 28 U.S.C. § 1930(a)(6) as amended January 26, 1996, P.L. No. 104–99, Sec. 211 and September 30, 1996, P.L. 104–208, 110 Stat. 3009, requires the debtor to pay a quarterly fee for each quarter after a case is filed and to continue to make that payment until the case is converted, dismissed, or a final decree is entered.

The UST raises two issues, (1) may the terms of a confirmed plan of reorganization bind the UST with respect to obligations that arise after confirmation of the plan and (2) whether the term "disbursement" as contemplated by 28 U.S.C. § 1930 is limited to funds set aside for disbursement under the plan or does it include all disbursements made by the reorganized debtor? The UST relies primarily on *Holywell Corp. v. Smith,* 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) and *In re CF&I Fabricators of Utah, Inc.,* 150 F.3d 1233 (10th Cir.1998) for the proposition that a plan cannot bind the parties with respect to post-confirmation fees which are non-negotiable statutory requirements in a bankruptcy context. In regard to her position that the term "disbursements" includes payments out-

---

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

side the plan as well as those made pursuant to the plan, the UST directs my attention to *In re Postconfirmation Fees*, 224 B.R. 793, 798 (E.D.Wash.1998); *A.H. Robins Co., Inc.*, 219 B.R. 145, 151 (Bkrtcy. E.D.Va.1998); *Vergos v. Uncle Bud's, Inc.*, 1998 WL 652542 (M.D.Tenn.1998); and *In re P.J. Keating Co.*, 205 B.R. 663 (Bankr. D.Mass.1997).

The response of the creditors' committee can be summarized as follows. The UST is bound by the terms of the plan and the UST implicitly accepted the plan by not objecting to its confirmation. As such, the UST cannot now collaterally attack the final order confirming the plan because of the principles of both res judicata and collateral estoppel. Alternatively, the plan provided for payment of presently due and future trustee's fees calculated on the total distributions contemplated by the plan. This calculation is also consistent with the statutory framework of 28 U.S.C. § 1930.

■ A failure to timely object to confirmation of a plan constitutes acceptance of the plan. *In re Szostek*, 886 F.2d 1405 (3rd Cir.1989) and *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir.1988). The finality aspect of court orders is discussed in the reasoning of the *Ruti–Sweetwater* court. "The Code contemplates that concerned creditors will take an active role in protecting their claims. Otherwise, Bankruptcy Rule 3017, which provides for fixing a deadline for filing rejections of a plan, and Bankruptcy Rule 3020(b), which provides for fixing a deadline for filing objections to confirmation, would have no substance." *Citing In re Record Club of America*, 38 B.R. 691, 696 (M.D.Pa.1983). *Id.* at 1267. See also *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251 (4th Cir.1997) and *Celotex Corp. v. Edwards*, 514 U.S. 300, 305–07, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

■ In *First Union Commercial Corporation v. Nelson, Mullins, Riley and Scarborough*, 81 F.3d 1310, 1315 (4th Cir.

1996), I find the following which addresses the conclusiveness of a confirmation order:

The doctrine of res judicata applies in the bankruptcy context. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir. 1987). A bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect. *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir. 1993); see also 5 Collier on Bankruptcy ¶ 1141.01[1] (15th ed.1989). Pursuant to § 11 U.S.C. 1141(a), all parties are bound by the terms of a confirmed plan of reorganization. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991). Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so. *Turshen*, 823 F.2d at 839 ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts.") (citation omitted); see also *Chattanooga Wholesale*, 930 F.2d at 463; *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993) (listing cases), aff'd, 59 F.3d 175, 1995 WL 369528 (9th Cir. 1995). More specifically, federal courts have consistently applied res judicata principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order. See, e.g., *Department of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473–74 (4th Cir.1990); *Justice Oaks*, 898 F.2d at 1552.

■ Claim preclusion (res judicata) gives dispositive effect to a prior judgment if an issue which could have been litigated was not raised. "Claim preclusion re-

quires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *In Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra,* 983 F.2d 495, 504 (3rd Cir.1992).

◼ To be collaterally estopped from relitigating an issue that was adjudicated in a prior action, the following must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *In re Ross,* 602 F.2d 604, 608 (3rd Cir.1979).

◼ The UST, properly served with the plan, had opportunity to review the plan and question any objectionable provision therein. The UST was present at the confirmation hearing and did not raise an objection at that time.

In applying the *Centra* test above, I look to the similarity of the underlying events of the claims to determine if they give rise to the same causes of action. I find that the instant motion and the process of obtaining confirmation of the plan with opportunity for objection stem from similar facts and events giving rise to the same cause of action and, therefore, the cause of action represented by both, i.e., the payment of UST's fees, is precluded by res judicata.

Moreover, the attempt to alter the statutory framework of payment of UST fees under the terms of the plan is an issue that was adjudicated in the plan confirmation process and the UST is collaterally estopped under the test enunciated by *In re Ross,* 602 F.2d 604 (3rd Cir.1979).

Regardless of my ruling, I must address the UST's reliance on the *Holywell* case to support her argument that the terms of the plan cannot bind the UST and her efforts to collect fees. The *Holywell* case provides that, "Even if § 1141(a)[2] binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to post-confirmation claims." *Holywell,* 503 U.S. at 58, 112 S.Ct. 1021. (Footnote ours.) The plan trustee in *Holywell* argued that he did not have to file returns or pay taxes on gains realized from the sale of debtors' property put into trust because those responsibilities were not specifically spelled out as a term of the confirmed plan. The United States did not object to the plan which said nothing about whether the trustee had to file income tax returns or pay taxes on the sale of the properties. The trustee's position in *Holywell* smacks of convenience because by his reasoning he did not need to do anything to fulfill any of his legal duties as a fiduciary under the law other than what was spelled out in the plan. Furthermore, the *Holywell* trustee could insulate himself from what otherwise would be considered normal requirements imposed on any assignee of property or trustee of any trust. I place significance on the fact that the plan in *Holywell* was silent as to the plan trustee's responsibilities to pay future taxes as a result of the sale of property in his possession as a fiduciary.

In contrast to *Holywell* is the case of *State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777 (4th Cir. 1997), in which a confirmed plan exempted plan transfers from state stamp and other taxes. As in this case, the State of Mary-

---

**2.** 11 U.S.C.A. § 1141(a). Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

land, which was a creditor by virtue of the debtor owing it pre-petition taxes, had notice with full and fair opportunity to object or otherwise participate in the confirmation process. After the plan was confirmed, the state brought an action in state court which was thereafter removed to federal court in an effort to collect the taxes. Maryland asserted it was not bound by the plan because it was not yet a creditor for the taxes which would only become due long after the plan was approved. In essence, the argument was that Maryland could not act presently because it might have only claims for future acts. The *Antonelli* court addressed the *Holywell* case, albeit in a footnote, and pointed out that unlike the plan in *Holywell*, which was silent concerning the taxes, the *Antonelli* plan directly stated that the liquidating trust was not liable for the payment of the taxes and, therefore, the court could not see how the holding of *Celotex*, (that a bankruptcy court's final order cannot be collaterally attacked), could be circumvented. *See Antonelli*, 123 F.3d at 782, FN*.

The distinctions between the *Holywell* and *Antonelli* cases are significant. It is too simplistic an approach for resolution of this case to rely on a blanket statement at the conclusion of a Supreme Court case (*Holywell*) that a confirmed plan cannot bind a creditor with respect to post-confirmation claims. Here, the UST is both a pre-confirmation and post-confirmation creditor because the fees were due the UST before the plan was confirmed and fees accrued post-confirmation based on plan disbursements by the Debtor. If the parties disagreed with or misapprehended the nature and extent of the disbursements as contemplated by the plan, or if the approval of the plan was in error, a collateral attack on the substance of my Order was not the proper way to resolve these issues. The propriety and legal basis of the Order confirming the plan could have been examined on appeal. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987). In any event, the UST's reliance on *Holywell* falls short in her efforts to support the instant Motion.

▮▮▮ Ultimately, the issue is whether I have jurisdiction to confirm a plan which addressed the post-confirmation payment of UST's fees under 28 U.S.C. § 1930. The jurisdictional grant of 28 U.S.C. § 1334 is broad. Jurisdiction exists with a bankruptcy court to oversee disputes with the collection of UST fees both before and after confirmation. *United States v. CF&I Fabricators of Utah Inc.*, 150 F.3d 1233 (10th Cir.1998), *U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 216 B.R. 764 (W.D.Pa.1997), *In re A.H. Robins*, 219 B.R. 145 (Bankr.E.D.Va.1998). Furthermore, whether I had core or non-core related jurisdiction is of no moment because a confirmation order has claim preclusive effect in non-core related matters as well as core matters. *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187 (3rd Cir.1999).

While the parties raised the issue of how to define the term "disbursements" in 28 U.S.C. § 1930, that issue is mooted by both the res judicata and the collateral estoppel effect the Order confirming the plan has on the UST's attempt to collect fees other than provided for in the plan.

An appropriate Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, the Motion of the United States Trustee to Compel the Payment of Quarterly Fees and Motion to Dismiss, Convert to Chapter 7 or for the Entry of a Final Decree, filed November 17, 1998, (Doc. # 372), is denied.