

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2004

# Binder v. Price Waterhouse

Precedential or Non-Precedential: Precedential

Docket No. 03-1857

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Binder v. Price Waterhouse" (2004). *2004 Decisions.* Paper 541.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/541

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1857

IN RE: RESORTS
INTERNATIONAL, INC.,
RESORTS INTERNATIONAL
FINANCING, INC.,
GRIFFIN RESORTS, INC.,
RESORTS HOLDING, INC.,
                                    Debtors

J. LOUIS BINDER,
as Trustee of the Resorts
International, Inc. Litigation Trust

v.

PRICE WATERHOUSE & CO., LLP,
                                    Appellant

On Appeal from the
United States District Court for the
District of New Jersey
D.C. Civil Action 02-cv-01333
(Honorable Dickinson R. Debevoise)

Argued October 29, 2003

Before: SCIRICA, *Chief Judge*,
NYGAARD and AMBRO,
*Circuit Judges*

(Filed  June 22, 2004)

ALAN E. KRAUS, ESQUIRE (Argued)
Latham & Watkins
P.O. Box 10174
One Newark Center, 16th Floor
Newark, New Jersey 07101
        Attorney for Appellant

DAVID H. PIKUS, ESQUIRE (Argued)
Bressler, Amery & Ross, P.C.
325 Columbia Turnpike
Florham Park, New Jersey 07932
        Attorney for Appellee,
        J. Louis Binder, as Trustee
        of the Resorts International, Inc.
        Litigation Trust

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

        This appeal addresses the scope of "related to" jurisdiction of the bankruptcy court for post-confirmation claims brought on behalf of a litigation trust against an accounting firm. The trustee sued the accounting firm for professional negligence and breach of contract for work it performed for the trust. The Bankruptcy Court declined to hear the claim, finding it lacked subject matter jurisdiction. The District Court disagreed and reversed. We will reverse the order of the District Court and remand for proceedings consistent with this opinion.

**I.**

**A.  Overview of Affected Parties**

        The underlying matter in this appeal is an accounting malpractice action. J.

Louis Binder, the Trustee for the Resorts International, Inc. Litigation Trust, brought a claim in excess of $500,000 against accounting firm Price Waterhouse & Co. for professional malpractice and breach of contract in connection with accounting services performed for the Litigation Trust. The Trustee's principal allegation is that Price Waterhouse erroneously reported in its audit that accrued interest on Litigation Trust accounts belonged to the debtor rather than to the Litigation Trust. Underlying this claim was a suit between the Litigation Trust and the debtor, Resorts International, Inc., over entitlement to the accrued interest. According to the Trustee, Price Waterhouse's erroneous reports were relied on by the bankruptcy court to the Litigation Trust's detriment.

The debtor, Resorts International, Inc., is not a party to the malpractice action. The debtor assigned to the Litigation Trustee all its rights, title, and interest in the Litigation Trust's primary asset, its claim against Donald Trump and affiliated entities. Because the Bankruptcy Court confirmed the Reorganization Plan, the debtor's estate no longer exists.

Nonetheless, the Trustee alleges the debtor's estate would still be affected by the malpractice suit because the Litigation Trust is effectively a continuation of the bankruptcy estate. Furthermore, contends the Trustee, any recovery obtained in this action would necessarily become Trust assets, available to cover any liability that might arise in the accrued interest lawsuit or available for possible distribution to the beneficiaries of the Litigation Trust, who were former creditors of the debtor's estate.

Price Waterhouse responds that the Litigation Trust, a legally distinct entity, is not a continuation of the bankruptcy estate for jurisdictional purposes. Moreover, Price Waterhouse contends the debtor is only tangentially affected by this malpractice action after it assigned away its interests in the litigation claims, and the Litigation Trust beneficiaries traded their creditor status to attain rights to the Trust's assets.

## B. Facts

On November 12, 1989, creditors of Resorts International, Inc.[1] and Resorts International Financing, Inc. filed against them Chapter 11 involuntary reorganization petitions in the United States Bankruptcy Court for the District of New Jersey. On December 22, 1989, Griffin Resorts and Griffin Resorts Holding, Inc., affiliates of Resorts International, filed separate voluntary petitions under Chapter 11. All of the cases were consolidated.

On August 28, 1990, the Bankruptcy Court issued an Order confirming the Second Amended Joint Plan of Reorganization. On September 17,

---

[1]Resorts International, Inc. changed its name on June 30, 1995, to Griffin Gaming & Entertainment, Inc. For sake of clarity, we will continue to refer to it as Resorts International, Inc.

1990, the parties entered into a Final Plan and Litigation Trust Agreement. The Final Plan created a Litigation Trust for the benefit of certain creditors. Section 7.10(a) of the Plan provided: "Litigation Trustee shall retain and preserve the Litigation Claims for enforcement, as representative of and successor to the Reorganizing Entities in accordance with Bankruptcy Code §§ 1123(b)(3)(B) and 1145(a)." The beneficial interests in the Litigation Trust were divided into ten million Litigation Trust Units and allocated to certain creditors, the Unitholders,[2] under a formula set forth in section 7.10(b) of the Plan. Under section 7.10(d), each Unitholder was entitled to a pro rata share of any distribution from the Litigation Trust.

The assets assigned to the Litigation Trust were claims originally held by the debtor, Resorts International, Inc., against Donald J. Trump and affiliated entities, arising from Trump's 1988 leveraged buyout of the Taj Mahal Resort. Upon formation of the Litigation Trust, the litigation claims were assigned to the Trustee. The Plan authorized the Trustee to prosecute the claims against the Trump entities. The Plan and Litigation Trust Agreement also required the debtor to provide an irrevocable letter of credit in

---

[2]The Unitholders were the holders of allowed Class 3B Claims, allowed Resorts International, Inc. Debenture Claims, and allowed Other Class 3C Claims as defined by the Plan. *In re Resorts Int'l, Inc.*, 199 B.R. 113, 115 n.2 (Bankr. D.N.J. 1996).

the amount of $5,000,000 to the Litigation Trust to enable it to pursue the litigation claims.

On May 28, 1991, the Trustee entered into an agreement with Trump and his affiliates and the debtor settling the litigation claims on behalf of the Trust's Unitholders in the amount of $12,000,000, subject to approval by the Unitholders. Approval was solicited and received by July 15, 1991. The Settlement Agreement proceeds became assets of the Litigation Trust.

The Litigation Trust Agreement contained several provisions affecting Price Waterhouse, though it was never named in the document. Section 3.2 of the Litigation Trust Agreement provided that "[t]he Trustee shall retain an independent public accounting firm to audit the financial books and records of the Trust and to perform such other reviews or audits as may be appropriate in the Trustee's sole discretion," and that the Trustee "shall pay such accounting firm reasonable compensation from the Trust Assets" for its services. Section 5.5 of the Litigation Trust Agreement required the Trustee to report to all Unitholders the details of the Trust's transactions and disbursements at least annually and to have these reports "audited by the independent accounting firm retained by the Trustee . . . not less frequently than annually."

On April 17, 1990, representatives of the Litigation Trust's Unitholders elected Kenneth R. Feinberg as Litigation Trustee. On November 1, 1990, after

3

confirmation of the Plan, the Trustee retained Price Waterhouse to provide auditing and tax-related services to the Litigation Trust. Subsequently, under an order dated August 17, 1994, J. Louis Binder replaced Feinberg as Trustee. Shortly thereafter, the Trustee terminated the services of Price Waterhouse. On April 15, 1997, the Trustee filed this adversary proceeding against Price Waterhouse alleging professional negligence and breach of contract.

The Trustee alleged Price Waterhouse committed professional malpractice by making several errors in its accounting and tax advice. His principal allegation is that Price Waterhouse erroneously reported in its audit reports that certain accrued interest on the Litigation Trust accounts belonged to the debtor rather than to the Trust. The accrued interest was the subject of a dispute between the debtor and the Litigation Trust—a dispute the Bankruptcy Court decided in part in favor of the debtor and in part in favor of the Trust. *See In re Resorts Int'l,* 199 B.R. at 118-19.[3] The

Trustee alleged that to the extent the Bankruptcy Court approved the debtor's claim to the interest, it relied on Price Waterhouse's audit reports, so that its "errors" injured the Litigation Trust. The Trustee alleged that even though the Trust partially prevailed in the interest dispute, Price Waterhouse's erroneous characterization caused the Trust to incur

---

[3]The Bankruptcy Court allocated the interest between the Litigation Trust and the debtor in the following manner:

Interest income earned on the Expense Account for the period beginning on or about October 3, 1990 through May 28, 1991 belongs to Resorts. Upon settlement of the Litigation Claims, the balance of the

$5 million deposit became a "Trust Asset" as defined by Article II of the Litigation Trust Agreement, and any interest earned on such "Trust Asset" also became a "Trust Asset." Accordingly, the Litigation Trust is entitled to interest earned on the balance of the initial $5 million deposit for the period beginning May 28, 1991 through the present date. To the extent that the Settlement Agreement dated May 28, 1991 between the former Litigation Trustee Feinberg and Resorts provided for interest income earned on the Expense Account for the period March 16, 1991 through May 28, 1991 to be paid to Resorts, the Litigation Trust's entitlement to interest shall accrue from the post-settlement period following May 28, 1991.

*In re Resorts Int'l,* 199 B.R. at 125.

unnecessary litigation costs in defending its entitlement. The Trustee also alleged certain errors in tax advice and auditing provided to the Trustee and faulted Price Waterhouse for failing to review and interpret certain Litigation Trust documents. The Trustee sought damages and disgorgement of fees in excess of $500,000.

## C. Procedural History

On April 15, 1997, almost seven years after Reorganization Plan confirmation, the Trustee filed the underlying professional malpractice action against Price Waterhouse in the United States Bankruptcy Court for the District of New Jersey. On January 4, 2002, the Bankruptcy Court granted Price Waterhouse's motion to dismiss for lack of subject matter jurisdiction finding there was no "related to" or "core" jurisdiction. *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, Adv. No. 97-2283, slip op. at 22, 30, 35 (Bankr. D.N.J. Jan. 4, 2002). Disagreeing with the Trustee that this was a "core" proceeding, the Bankruptcy Court characterized the matter as a post-confirmation dispute between two non-debtors involving state law claims that did not affect the "administration of the estate, property of the estate, or liquidation of assets of the estate." *Id.* at 21. Although finding its post-confirmation jurisdiction to be "extremely limited," the Bankruptcy Court recognized that it retained post-confirmation jurisdiction over disputes that potentially "affect the successful implementation and consummation of the plan." *Id.* at 28

(internal quotations omitted). But the Bankruptcy Court rejected "related to" jurisdiction because the claims could not have had any "conceivable effect on the administration of the estate," and because the dispute would not significantly affect consummation of the Reorganization Plan. *See id.* at 29-32. It also found that none of the Plan's retention provisions were intended to serve as a basis for jurisdiction over the Litigation Trust and third-party accountants; nor could the Plan language create jurisdiction greater than that granted by Congress. *Id.* at 13-14.

The Trustee appealed to the District Court, which reversed and remanded. *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, No. 02-1333, slip op. at 19 (D.N.J. Dec. 18, 2002). The District Court held "the terms on which the Litigation Trust was created and its practical role in the Plan lead to the conclusion that claims arising from professional misconduct in the Trust's affairs are sufficiently related to the bankruptcy case to be within the jurisdiction of the Bankruptcy Court." *Id.* at 7. The Court explained:

> [C]onfirmation did not terminate the estate with respect to the property vested in the Litigation Trust; and the Trust represented a partial continuation of the estate. Consequently, the jurisdiction of the bankruptcy court over proceedings arising from the

affairs of the Litigation Trust is not substantially different from its jurisdiction over similar matters pre-confirmation, and it should have the power to hear claims of professional malpractice in the administration of the Trust.

*Id.* at 12. But in light of the "uncertainties surrounding the exercise of Bankruptcy Court jurisdiction post-confirmation," the District Court certified its ruling for immediate appeal under 28 U.S.C. § 1292(b). *Id.* at 17-18. Price Waterhouse petitioned for leave to appeal. The Trustee chose not to contest the petition. We granted leave to appeal.

Price Waterhouse claims the District Court erred in upholding "related to" bankruptcy jurisdiction because there can be no conceivable effect on the administration of the estate. Furthermore, it contends, the District Court's judgment, if permitted to stand, threatens unending jurisdiction in the Bankruptcy Court well after dissolution of the debtor's estate. The Trustee counters that this professional malpractice cause of action involves parties, assets, and issues central to the Reorganization Plan and is "related to" the bankruptcy, especially given the sweeping jurisdictional retention provisions in the Plan and Litigation Trust Agreement.

The jurisdiction of the Bankruptcy Court is at issue. The District Court had jurisdiction to review the Bankruptcy Court's order under 28 U.S.C. § 158. We have jurisdiction under 28 U.S.C. § 1292(b). Our review of the District Court's order on jurisdiction is de novo. *Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 559 (3d Cir. 1994).[4]

## II.

Both the Reorganization Plan and Litigation Trust Agreement contain retention of jurisdiction provisions. Article XI of the Plan provides in part:

> The Bankruptcy Court will retain jurisdiction of the Reorganizing Cases for the following purposes: . . . (c) To ensure that the distribution of Holders of Claims and Interests are [sic] accomplished as provided herein; . . . (h) To hear and determine disputes arising in connection with the Plan or its implementation including disputes arising under agreements, documents or instrument executed in connection with this Plan; . . . (i) To construe and to take any action to enforce

___

[4]We agree with the District Court that the challenge is a facial attack regarding an issue of law rather than a factual attack and accordingly will assume the truth of the allegations in the Complaint. *See Binder*, No. 02-1333, slip op. at 7-8.

the Plan and issue such orders as may be necessary for the implementation, execution, and consummation of the Plan; . . . (o) To hear and determine any other matters not inconsistent with Chapter 11 of the Bankruptcy Code.

Article VIII of the Litigation Trust Agreement provides:

> The Bankruptcy Court shall retain exclusive jurisdiction over the Litigation Claims and Counterclaims, the Trust, the Trustee, and the Trust Assets, as provided for in the Plan, including, without limitation, the determination of all controversies and disputes arising under or in connection with this Trust Agreement.

The Trustee contends these provisions confer bankruptcy court jurisdiction over this dispute because the Litigation Trust Agreement falls within the definition of agreements, documents, or instruments executed in connection with the Plan. Furthermore, the Trustee contends the dispute involves the performance of professionals whose retention was mandated and whose duties were specified by the Litigation Trust Agreement. The Trustee stresses that, under the Agreement, the Bankruptcy Court's retention over any dispute according to the Agreement was "not only comprehensive it was *exclusive*." Appellee's Br. at 9 (emphasis in original).

Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction "cannot be conferred by consent" of the parties. *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996). Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. *In re Continental Airlines, Inc.*, 236 B.R. 318, 323 (Bankr. D. Del. 1999), *aff'd*, 2000 WL 1425751 (D. Del. September 12, 2000), *aff'd*, 279 F.3d 226 (3rd Cir. 2002). Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. *Id.*; *accord United States Trustee v. Gryphon at the Stone Mansion*, 216 B.R. 764, 769 (W.D. Pa. 1997) ("A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction."), *aff'd*, 166 F.3d 552 (3d Cir. 1999). Bankruptcy courts can only act in proceedings within their jurisdiction. *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997). If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant. But if there is jurisdiction, we will give effect to retention of jurisdiction provisions.

Consequently, we will examine whether this dispute falls within the Bankruptcy Court's subject matter jurisdiction.

## III.

Congress has vested "limited authority" in bankruptcy courts. *Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991). Bankruptcy courts fall outside of the constitutional authority of Article III and derive their authority from federal statutes. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60-87 (1982) (plurality opinion). There are significant restrictions on what functions can be constitutionally delegated to these courts. *See id.* at 63-87. "[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002).

28 U.S.C. § 1334 grants jurisdiction over bankruptcy cases and proceedings to the district court: the district courts "shall have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* at (a)-(b). Procedurally, a district court may refer all cases and proceedings that fall within this section to the bankruptcy court. 28 U.S.C. § 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *Id.* The district courts' power to refer is discretionary, but courts "routinely refer" most bankruptcy cases to the bankruptcy court. *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1175 (3d Cir. 1996).

Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: "'(1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'" *In re Guild & Gallery Plus*, 72 F.3d at 1175 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991)). Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. *See* 1 *Collier on Bankruptcy*, P3.02[2], at 3-35 (15th ed. rev. 2003). Congress vested the bankruptcy courts with full adjudicative power with regard to "core" proceedings, subject to appellate review by the district courts. 28 U.S.C. §§ 157(b)(1), 158(a), (c). At the same time, it provided that, for "non-core" proceedings that are otherwise related to a case under title 11, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to de

novo review by that court. 28 U.S.C. § 157(c)(1).

## A. Core Proceedings

28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." *Id.* 28 U.S.C. § 157(b)(2) provides a non-exhaustive list of examples of core proceedings such as "matters concerning the administration of the estate," "orders to turn over property of the estate," or "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." *Id.*[5] We have held that a core

---

[5]The full list of examples of core proceedings follows:

(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and (O) other proceedings affecting the liquidation of

9

proceeding under section 157 is one that "'invokes a substantive right provided by title 11'" or one that "'by its nature, could arise only in the context of a bankruptcy case.'" *In re Guild & Gallery Plus*, 72 F.3d at 1178 (quoting *In re Marcus Hook*, 943 F.2d at 267).

The Trustee argues this matter qualifies as a "core" proceeding, relying on *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999). In *Southmark*, the court concluded that a debtor's suit against an accounting firm was a core proceeding in bankruptcy, observing that the bankruptcy court must be able to ensure "that court-approved managers of the debtor's estate are performing their work conscientiously, and cost-effectively." *Id.* at 931. The court also noted that supervising court-appointed professionals "bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims." *Id.*

Notwithstanding the Trustee's arguments, it is difficult to see how this malpractice matter could be considered a

the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C. § 157(b)(2).

"core" proceeding. It is not a proceeding that invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *In re Guild and Gallery Plus*, 72 F.3d at 1178.

Unlike in *Southmark*, this claim arose post-plan confirmation. It does not directly affect the debtor or the liquidation of the estate's assets. Furthermore, the accounting firm's alleged malpractice in *Southmark* implicated the integrity of the entire bankruptcy process. Southmark's bankruptcy arose out of its involvement in Drexel Burnham Lambert, Inc.'s ill-fated junk bond investments. *Southmark*, 163 F.3d at 927-28. Southmark sought the appointment of an accounting firm to provide an objective, independent assessment of potential legal claims against third-parties. *Id.* Unbeknownst to Southmark, Drexel was one of the accounting firm's largest clients. *Id.* at 927-28. According to Southmark, the accounting firm committed malpractice by failing to satisfactorily investigate potential claims against Drexel. *Id.* Southmark alleged the accounting firm's breach of its court-appointed fiduciary duty prevented the estate from recovering from Drexel. *Id.* at 928. The accounting firms's failure to investigate Drexel implicated the core of the bankruptcy process. Its alleged malpractice was inseparable from the bankruptcy context. Here, Price Waterhouse's alleged malpractice, erroneously reporting that certain accrued interest belonged to one entity rather than to another and

committing other errors in auditing and tax advice, even if true, is not a proceeding that could arise only in the bankruptcy context.

Regardless, we need not resolve whether this is a "core" proceeding for subject matter jurisdictional purposes because "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." *In re Marcus Hook*, 943 F.2d at 266. Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding but still might not be able to enter final judgments and orders. *Id.* Non-core "related to" jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is at least "related to" the bankruptcy. *Donaldson*, 104 F.3d at 552.

## B. Non-Core "Related To" Proceedings

### 1. The *Pacor* Test

With "related to" jurisdiction, Congress intended to grant bankruptcy courts "comprehensive jurisdiction" so that they could "'deal efficiently and expeditiously'" with matters connected with the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Nonetheless, a bankruptcy court's "related to" jurisdiction "cannot be limitless." *Id.* We set forth the seminal test for determining the

boundaries of "related to" jurisdiction in *Pacor*, 743 F.2d at 994.[6]

Under *Pacor*, bankruptcy courts have jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* In *In re Marcus Hook*, 943 F.2d 261, we emphasized that a key word in this test is "conceivable" and that "[c]ertainty, or even likelihood, is not a requirement." *Id.* at 264. In *Pacor*, we observed: "[T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994. The Supreme Court has explained that the critical component of the *Pacor* test is that "bankruptcy courts

---

[6]The Supreme Court effectively has overruled *Pacor* with respect to its holding that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). But *Things Remembered* does not disturb the authority of *Pacor* on the points for which we cite it. In fact, the *Pacor* test "has been enormously influential" as a "cogent analytical framework" relied upon by our sister circuits more than any other case in this area of the law. *In re Guild & Gallery Plus*, 72 F.3d at 1181.

have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex*, 514 U.S. at 308 n.6.

## 2. The Post-Confirmation Context of the "Related To" Inquiry

As noted, *Pacor* and its progeny provide the analytical framework for determining "related to" jurisdiction. But most of the cases decided under *Pacor* do not arise post-confirmation or even after the creation of a litigation trust. Litigation trusts, which serve a valid purpose in the bankruptcy process, may continue long after a reorganization plan has been confirmed and the debtor has emerged from bankruptcy. And yet bankruptcy jurisdiction may still obtain if there is sufficient connection to the bankruptcy.

The post-confirmation context of this dispute affects our "related to" inquiry because bankruptcy court jurisdiction "must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." *Donaldson*, 104 F.3d at 553.[7] After

_____

[7]The District Court recognized that "special considerations dictate that the application of the *Pacor* test provides jurisdiction over a narrower range of cases post-confirmation than pre-confirmation." *Binder*, No. 02-1333, slip op. at 10. Other courts have also recognized how confirmation affects bankruptcy jurisdiction, though they have not specifically done so in cases involving

confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. *See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001); *In re Fairfield Cmtys., Inc.*, 142 F.3d 1093, 1095-96 (8th Cir. 1998). This is so because, under traditional *Pacor* analysis, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected." *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 380 (3d Cir. 2002) (internal quotations omitted), *cert. denied* 537 U.S. 1148 (2003). At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. *See In re Fairfield Cmtys.*, 142 F.3d at 1095 (holding that once a bankrupt debtor's plan has been confirmed the debtor's estate ceases to exist). Unless otherwise provided by the plan or order confirming the plan, "the confirmation of

_____

litigation trusts. *See H & L Developers v. Arvida/JMB Partners (In re H & L Developers)*, 178 B.R. 71, 76 (Bankr. E.D. Pa. 1994) ("[O]nce a plan has been confirmed, the court's jurisdiction begins to weaken.") (internal quotations omitted); *Eastland Partners Ltd. v. Brown (In re Eastland Partners Ltd.)*, 199 B.R. 917, 919-20 (Bankr. E.D. Mich. 1996) ("Following confirmation of a chapter 11 debtor's plan, a bankruptcy court has a fairly narrow jurisdiction.").

a plan vests all of the property of the estate" in the reorganized debtor. 11 U.S.C. § 1141(b). *See also NVF Co. v. New Castle County*, 276 B.R. 340, 348 (D. Del. 2002) (holding that the confirmation of a plan revests the estate's property in the reorganized debtor, and accordingly, the bankruptcy estate "no longer existed"), *aff'd* 2003 WL 328428 (3d Cir. Jan. 21, 2003).

But courts do not usually apply *Pacor*'s "effect on the bankruptcy estate" test so literally as to entirely bar post-confirmation bankruptcy jurisdiction. As the District Court correctly noted, though the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely. *Binder*, No. 02-1333, slip op. at 9. Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to "direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan," *id.*, and Fed. R. Bankr. P. 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." *Id.* Although § 1142(b) assumes that post-confirmation jurisdiction exists for disputes concerning the consummation of a confirmed plan, 28 U.S.C. § 1334 remains the source of this jurisdiction. *In re United States Brass Corp.*, 301 F.3d at 306.

Moreover, several courts have preserved post-confirmation jurisdiction in the bankruptcy court. *See Gryphon*, 166 F.3d at 555-56 (holding that the bankruptcy court had post-confirmation jurisdiction because a trustee's action to enforce a fee provision was related to and arising in the bankruptcy); *Donaldson*, 104 F.3d at 552-54 (upholding post-confirmation bankruptcy court jurisdiction where the debtors failed to fund the reorganization plan and failed to pay unsecured creditors as required by the plan). And courts have upheld post-confirmation jurisdiction in situations involving trusts and similar entities. *See Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372-73 (4th Cir. 1996) (upholding bankruptcy jurisdiction over a professional fees dispute between a claimants' trust and attorneys representing claimants on the trust).[8]

---

[8]Other courts have also upheld post-confirmation bankruptcy jurisdiction over continuing trusts. *See New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 219 F.3d 478, 479, 493 (5th Cir. 2001) (assuming bankruptcy court jurisdiction over a post-confirmation proceeding involving a settlement trust where the court had to interpret the plan of reorganization in order to resolve a dispute); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1171 (10th Cir. 2000) (holding that a post-confirmation fraud action involving a plan-created trust was related to the bankruptcy proceeding); *United States v. Unger*, 949 F.2d 231, 233-35 (8th Cir. 1991) (holding

Courts have applied varying standards to determine whether "related to" jurisdiction should be upheld post-confirmation. We noted in *Donaldson*, 104 F.3d 547, that some courts have held that the act of plan confirmation changes the *Pacor* test from "whether the outcome of the proceeding could conceivably have any effect on the estate being administered" to "whether the outcome could 'significantly affect[] consumation of the plan as confirmed.'" *Id.* at 553 (quoting *Grimes v. Graue (In re Haws),* 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993)).[9] In *Donaldson*, we declined to

a bankruptcy court had post-confirmation jurisdiction when a representative of the creditors committee deposited trust funds into his personal account in contravention of the plan); *Mayor v. W. Va. (In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 524 (6th Cir. 2002) (assuming without analysis post-confirmation bankruptcy jurisdiction over a dispute involving a settlement trust).

[9]Other courts have applied similar tests that assess whether the dispute could conceivably affect the implementation or consummation of the confirmed plan. *See Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 714 (Bankr. D. Del. 1996) ("[T]his court has subject matter jurisdiction over any proceeding that conceivably could affect [the debtor's] ability to consummate the confirmed plan."); *In re Walker*, 198 B.R. 476, 482 (Bankr. E.D. Va. 1996) ("Jurisdiction over certain post-confirmation disputes remains

determine the "precise standard" to apply post-confirmation. *First W. SBLC, Inc. v. Mac-Tav, Inc.*, 231 B.R. 878, 882 (D.N.J. 1999). Subsequently, in *Gryphon*, 166

with the Bankruptcy Court to the extent that those disputes might affect the successful implementation and consummation of the confirmed plan."); *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 464 (E.D. La. 1993) (Bankruptcy courts maintain jurisdiction if the proceeding has "a conceivable effect on the debtor's ability to consummate the confirmed plan."). Some courts have been reluctant to apply such a broad standard post-confirmation but have nonetheless found that bankruptcy court jurisdiction continues post-confirmation. *See In re Craig's Stores of Tex.*, 266 F.3d at 391 (holding that a bankruptcy court has jurisdiction over a civil proceeding if the litigated matter "bear[s] on the interpretation or execution of the debtor's plan"); *In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d 922, 924 (2d Cir. 1966) (holding that bankruptcy court jurisdiction continues post-confirmation at least "to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation"); *In re Leeds Bldg. Prod., Inc.*, 160 B.R. 689, 691 (Bankr. N.D. Ga. 1993) (concluding that the bankruptcy court's role post-confirmation "is limited to matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law").

F.3d 552, we applied the *Pacor* test to resolve a claim for post-confirmation fees brought by a United States Trustee, querying whether the dispute "could conceivably have any effect on the estate being administered in bankruptcy" and holding that the matter satisfies the *Pacor* test "because it directly relates to the debtor's liabilities—in fact it creates a liability—and could impact the handling and administration of the estate." *Id.* at 556. And in *Gryphon*, we held that though 11 U.S.C. § 1142[10] provides that the bankruptcy court may take action to ensure the consummation of a confirmed plan, the bankruptcy court may entertain other post-confirmation actions as well. 166 F.3d at 556.

Though courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter. For example, in *Donaldson*, 104 F.3d 547, we upheld bankruptcy court jurisdiction because the trustee through the lawsuit was "basically . . . seeking to carry out the intent of the reorganization plan." *Id.* at 553. We distinguished the matter from other cases denying jurisdiction because it had a "much closer nexus to the bankruptcy case." *Id.* In upholding

jurisdiction, we found significant the fact that the case did "not involve a dispute essentially collateral to the bankruptcy case." *Id.* Rather, the action "implicat[ed] the integrity of the bankruptcy process" because one party's actions impaired the other party's ability to act in accordance with the plan. *Id.* The post-confirmation fee dispute in *Gryphon*, 166 F.3d 552, also had a close nexus to the bankruptcy proceeding because it involved a U.S. Trustee's action to enforce a post-confirmation fee provision and created a liability for the debtor. *Id.* at 555. At the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding.

Whether a matter has a close nexus to a bankruptcy plan or proceeding is particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust res for payment on account of their claims. To a certain extent, litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed. The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of "unending jurisdiction" over continuing trusts.

---

[10]11 U.S.C. § 1142(b) authorizes the bankruptcy court to "direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan." *Id.*

15

An example of a dispute in which there was a sufficiently close nexus to the plan or proceeding to uphold bankruptcy court jurisdiction post-confirmation was an earlier proceeding involving the Resorts International, Inc. bankruptcy. *See In re Resorts Int'l*, 199 B.R. 113. There, unlike here, the Bankruptcy Court was required to construe and enforce provisions of the Plan to resolve a post-confirmation dispute over whether the Litigation Trust or the debtor was entitled to accrued interest. *Id.* at 120-25. The court correctly held that it retained jurisdiction to enter appropriate orders to enforce the intent and specific provisions of the Plan. *Id.* at 118-19.

*Bergstrom*, 86 F.3d 364, and *Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999), are useful for illustrating when there is a sufficiently close nexus to the bankruptcy plan or proceeding to uphold bankruptcy jurisdiction in post-confirmation situations involving continuing trusts. In *Bergstrom*, 86 F.3d 364, the dispute implicated an integral aspect of the bankruptcy process. The plan-created trust intended to distribute surplus funds to tort claimants on a pro rata basis. *Id.* at 367. But certain attorneys claimed entitlement to contingent fees. *Id.* The district court, sitting in bankruptcy, limited attorneys' fees to ten percent of the amounts distributed. *Id.* To resolve the dispute, it was necessary to interpret the plan's accompanying documents to determine whether it was unreasonable to charge standard attorneys' fees out of the pro rata distribution. *See id.* at 368-71. In upholding "related to"

jurisdiction, the court explained why the dispute was central to the bankruptcy proceeding: "The Trust was created to protect and pay those persons who had been damaged by use of the Dalkon Shield. The efforts of the Trust to settle the remaining claims could easily be affected if the remaining claimants are aware that any attorneys' fees out of the pro rata distribution will be limited to ten percent." *Id.* at 372. Accordingly, the dispute integrally affected the bankruptcy plan and proceeding, and it was appropriate for the district court, sitting in bankruptcy, to exercise jurisdiction over that proceeding.

In contrast, this kind of close nexus to the bankruptcy plan or proceeding was absent in *Falise*, 241 B.R. 48. *Falise* involved a dispute between tobacco manufacturers and a trust created as a result of the bankruptcy of an asbestos products producer. *Id.* at 51. The trust sought to recover from the tobacco companies for their role in contributing to asbestos-related illnesses. *Id.* Noting that the resolution of the dispute would require more than merely interpreting the plan's terms, the court held that bankruptcy court jurisdiction does not extend to a "major suit" brought by the trust against non-parties to the bankruptcy or to any closely related proceeding. *Id.* at 52, 55. In *Falise*, the resolution of the dispute would have had no impact on any integral aspect of the bankruptcy plan or proceeding. Accordingly, it was appropriate to find no bankruptcy jurisdiction over that collateral matter.

*In re Haws*, 158 B.R. 965, similarly illustrates when a proceeding lacks a sufficiently close nexus to the bankruptcy plan or proceeding to uphold post-confirmation jurisdiction. There, the action was brought by a trustee for a liquidating trust against a partner of the debtor for breach of fiduciary duty. *Id.* at 967-68. In holding the matter to be outside bankruptcy court jurisdiction, the court noted the plaintiff had failed to demonstrate how any damages recovered from the defendant were "necessary to effectuate the terms of the" plan. *Id.* at 971. The court recognized that "[n]owhere in the lawsuit is the bankruptcy court being asked to construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with in the face of violations." *Id.* It concluded: "The only nexus to this bankruptcy case is that the plaintiff in this matter is a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization." *Id.*

*Montana v. Goldin (In re Pegasus Gold Corp.)*, 296 B.R. 227 (D. Nev. 2003), is also instructive. A reclamation services corporation ("RSC") was created under a reorganization plan for the purpose of performing short-term reclamation work "in order to benefit the overall Plan goal of preserving the jobs of Debtors' employees to thereby maximize the possibility of creditor recovery." *Id.* at 231. The Trustee and RSC contended the state of Montana had represented that RSC would be given preference in the bidding for long-term reclamation work. *Id.* at 232.

They brought suit, alleging Montana breached the agreement by hiring a competitor to perform the reclamation work. *Id.* The court upheld bankruptcy court jurisdiction because RSC's failure, and its inability to retain the debtors' employees on account of Montana's breach, "undermine[d] the Plan's objectives for reorganization and the payment of creditors." *Id.* at 233-35. The court held that the "facts demonstrate the necessary close nexus between appellees' tort and contract claims and the bankruptcy proceeding." *Id.* at 235.

As stated, the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

**IV.**

We now assess whether the Bankruptcy Court can exercise "related to" jurisdiction over these malpractice claims. As noted, the Trustee's principal allegation was that Price Waterhouse erroneously reported in its audit reports that accrued interest on Litigation Trust accounts belonged to the debtor rather than to the Litigation Trust. The Trustee also alleged other errors in auditing and tax advice. Price Waterhouse's errors, according to

17

the Trustee, constituted professional negligence and breach of contract.

The Trustee has made several arguments why the malpractice claims are sufficiently connected to the bankruptcy process to uphold bankruptcy court jurisdiction: the claims affect the Litigation Trust, which is a continuation of the estate; the claims affect the debtor; the claims affect the operation of the Reorganization Plan; the claims affect the former creditors as beneficiaries of the Litigation Trust; and the jurisdictional retention provisions confer continued jurisdiction. The jurisdictional import of these arguments is not easily resolved.

Nonetheless, we believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation.

The Trustee argues the estate is affected because the Litigation Trust is a continuation of the estate. The District Court agreed, reasoning that the affairs of post-confirmation trusts are "effectively those of the estate (or at least analogous to those of the estate) for jurisdictional purposes." *Binder*, No. 02-1333, slip op. at 12-13. Though the Litigation Trust's assets, the proceeds from the litigation claims, were once assets of the estate, that alone does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy jurisdiction. The Litigation Trust's connection to the bankruptcy is not identical to that of the estate. Under section 1.1 of the Litigation Trust, the debtor "absolutely assigned to the Trustee and to its successors and assigns, all right, title and interest of the Reorganizing Entities in and to the Litigation Claims." Moreover, the Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed from bankruptcy court oversight without waiting for the resolution of the litigation claims. The deliberate act to separate the litigation claims from the bankruptcy estate weakens the Trustee's claim that the Litigation Trust has the same jurisdictional nexus as that of the estate. Given the limited jurisdiction of non-Article III bankruptcy courts, jurisdiction does not extend necessarily to all matters involving litigation trusts.

The Trustee also contends the resolution of the malpractice claim will affect the debtor, Resorts International, Inc. The debtor is not a party to this

litigation because, as stated, under section 1.1 of the Litigation Trust Agreement, it assigned away its right, title, and interest in the litigation claims. But the Trustee argues Resorts would still be affected by this dispute because it "is claiming to be a continuing creditor of the estate" due to the litigation over the accrued interest. Oral Argument Transcript at 32. Should Resorts prevail in that ongoing dispute,[11] the Trustee contends Resorts may have a claim against the Litigation Trust, and an award in the malpractice action could be distributed back to Resorts to pay on that claim. Such attenuated effect on the reorganized debtor does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy court jurisdiction. After assigning away its right, title, and interest in the Litigation Trust's litigation claims, the reorganized debtor would have no greater claim to the proceeds from this malpractice action than any other Litigation Trust creditor. Any funds eventually received by the debtor as a result of the malpractice dispute would be incidental to the bankruptcy process.

The Trustee maintains that continuing jurisdiction over the matter is "essential to the integrity of the Plan and its implementation." Appellee's Br. at 2. We disagree. It is true that accounting services are essential in administering trusts, and in certain circumstances, accounting errors could have a sufficiently close nexus to the bankruptcy plan or proceeding to warrant exercising "related to" jurisdiction post-confirmation. But the resolution of the claims here will have no substantial effect on the success of the Plan.

Resolution of this matter will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement. Whether Price Waterhouse was negligent or breached its contract will not be determined by reference to those documents. There is no dispute over their intent. The Trustee's claims are "ordinary" professional negligence and breach of contract claims that arise under state common law. Though the Plan and Trust Agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction.

The malpractice action could result in an increase in the Litigation Trust's finite assets. But the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer "related to" bankruptcy court jurisdiction post-confirmation. The Trust beneficiaries here no longer have the same connection to the bankruptcy proceeding as when they were creditors of the estate. For reasons they believed financially prudent, they traded

---

[11]Even though the Bankruptcy Court resolved the interest dispute in *In re Resorts Int'l*, 199 B.R. 113, according to the Trustee's Complaint, the dispute is "ongoing" because Resorts International, Inc. and the Litigation Trust "remain engaged in negotiations over the form of the order and settlement of other issues." Joint Appendix at 76.

their creditor status as claimants to gain rights to the Litigation Trust's assets. Thus, their connection to the bankruptcy plan or proceeding is more attenuated. Furthermore, if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the "related to" grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts. Accordingly, resolution of these malpractice claims will not affect the interpretation, implementation, consummation, execution, or administration of the Plan.[12]

---

[12]Price Waterhouse argues the matter turns in part on the fact that it was not explicitly named in the Litigation Trust Agreement or the Reorganization Plan and that the Bankruptcy Court did not approve its retention or dismissal. In some circumstances, these factors may affect the jurisdictional inquiry. But they are not significant here.

Price Waterhouse also argues the lapse of time since confirmation factors against bankruptcy jurisdiction. The Bankruptcy Court issued an Order confirming the Plan on August 28, 1990. The Trustee filed this malpractice action on April 15, 1997. The Trustee responds that Price Waterhouse's malpractice "began barely after the ink dried on the confirmation order," and notes that Price Waterhouse released its allegedly erroneous report that the interest income

## V.

For these reasons, there is no "related to" jurisdiction over the malpractice dispute, and it cannot find a home in the Bankruptcy Court. We will reverse the order of the District Court and remand for proceedings consistent with this opinion.

---

belonged to the Debtor in 1992. Appellee's Br. at 12-13. Though in some circumstances, the lapse of time since confirmation may be relevant to whether a matter has a "close nexus" to a bankruptcy plan or proceeding, we do not find it to be so here.

20